ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. FURLOW.

## Opinion delivered January 28, 1907.

1. CHANGE OF VENUE—CONTROVERTING GROUNDS OF PETITION.—Under Kirby's Digest, § 7998, the ground assigned in a petition for change of venue may be controverted in all cases except where a plaintiff has instituted suit in a county other than that of his residence, or than the county where the occurrence of which he complains took place, unless he was compelled to do so to get service on the defendant.   (Page 498.)

2. CARRIER—RIGHT TO REJECT TICKET.—A railway conductor has no right to reject a passenger's ticket because it was presented at an intermediate point between the station where it was issued and the passenger's destination.   (Page 500.)

3. SAME—EXPULSION OF PASSENGER—TIME LIMIT ON TICKET.—Where a ticket was sold to a passenger which was limited to the day of issuance, although there was no train thereafter on that day which the passenger could have taken, the carrier is liable for expelling the passenger from the first train which he could have taken on the following day.   (Page 502.)

4. SAME—DAMAGES FOR EXPULSION OF PASSENGER.—Where the evidence tended to prove that a passenger, who was a child of thirteen years, was wrongfully ejected from a train, that the conductor talked roughly to him and pushed him rudely, whereby he was much humiliated, a verdict of $250 damages can not be said to be excessive.   (Page 502.)

Appeal from Cleveland Circuit Court; *Zachariah T. Wood,* Judge; affirmed.

*S. H. West* and *Bridges & Wooldridge,* for appellant.

1.   The petition for change of venue showed that the plaintiff was not then, nor at the time of filing the suit, a resident of the county in which this suit was brought; and, the petition being duly verified as required by the statute, the petition should have been granted as a matter of right.   Kirby's Digest, § 7998, *proviso.*

2.   If there was no agreement when appellee bought the ticket that he should walk to Rison and catch train number three that night, still, if the ticket was not used on that day, the conductor had the right, under the rules of the company, to reject the ticket and eject the appellee from the train at a station unless he paid his fare.   Hutchinson on Carriers, § 580; 46 S. W. 209;

12 Am. & Eng. Ry. Cas. (N. S.), 104; 4 *Id.* 510; 2 *Id.* 112; 127 U. S. 390.

3. The verdict was excessive. The maximum limit of his recovery should have been $280, the amount paid for his ticket and nominal damages.

*Taylor & Jones,* for appellee.

1. Appellant's contention on the question of the change of venue is untenable. Having complied with the condition of the proviso, the right of defendant to a change of venue reverts to the original statute. 74 Ark. 172.

2. The jury's verdict settles the appellant's contention that appellee purchased the ticket with the understanding that he should walk to Rison and catch train number three. This was a question for the jury, and, having sufficient evidence to sustain it, their verdict will not be disturbed.

3. The rules of the company introduced in evidence provide: "Any transportation on which the limit has expired before presentation must not be honored, unless the circumstances are such that in the conductor's opinion the holder is entitled to use it; etc. This imposed upon the conductor the duty to investigate the circumstances of the case, and if he acted hastily, and without regard to the appellee's rights, the appellant is liable. 58 Ark. 136; 65 Ark. 177; 21 S. W. 951; 22 Am. St. Rep. 489; 11 *Id.* 434; 8 *Id.* 859; 36 S. W. 174; 33 S. W. 1028; 43 Ark. 529.

4. The verdict was not excessive. It is in testimony that the conductor and the porter took hold of the boy roughly, talked to him rudely, and *shoved* him off the train in such manner as to cause a witness to think that plaintiff was a "hobo," being put off for trying to "steal a ride." 58 Ark. 136, and cases cited.

McCulloch, J. The plaintiff is a boy about thirteen years of age, and sues the railway company for damages alleged to have been sustained on account of having been wrongfully ejected from the train. He boarded a southbound passenger train at Rison, Arkansas, a station on appellant's road in Cleveland County, on Sunday afternoon, July 31, 1904, and presented to the conductor a ticket reading from Clio, a station about four miles north of Rison, to Camden, Arkansas. The conductor refused

to honor the ticket, caused the tran to stop within about thirty yards below the station, and ejected the boy. The plaintiff alleged in his complaint that, "by reason of being ejected from said train, he was greatly distressed and humiliated, besides being prevented wrongfully by defendant from proceeding on his journey, causing plaintiff, in addition to being humiliated and wounded, the actual loss of the money paid for said ticket, to his damage in the sum of one thousand dollars." The jury returned verdict in his favor, and assessed the damage at the sum of two hundred and fifty dollars. The first question for our consideration is the decision of the trial court in denying the defendant's petition for a change of venue. The petition of defendant, in addition to the statutory grounds for change of venue, alleged that the plaintiff did not reside in the county where the action was instituted; and it is insisted by learned counsel for appellant that because of that allegation the prayer of the petition should have been granted as of course. The court heard testimony as to the existence of the statutory grounds for change of venue, and denied the prayer.

The statute regulating the practice upon petitions for change of venue in civil cases is as follows:

"Upon presenting the petition, which may be resisted, and notice to such judge, he may make an order for the change of the venue in such action, if in his judgment it be necessary to a fair and impartial trial, to a county to which there is no valid objection which he concludes is most convenient to the parties and their witnesses; provided, that in case where the plaintiff shall have instituted suit in a county other than that of his residence, or of the county where the occurrence of which he complains took place, unless compelled to do so in order to get service on the defendant, the defendant shall have the right to a change of venue upon presentation of his petition duly verified." Act April 13, 1899; Kirby's Digest, § 7998.

Prior to the passage of that statute the order for change of venue was granted as a matter of course upon the filing of a petition duly verified and supported by the affidavit of two credible persons. There was no authority for an issue to be made be granted as a matter of course upon presentation of the petition, upon the truth of the allegations of the petition or for the court

to inquire into the truth thereof. The power of the court was limited to an ascertainment whether or not the petition was in proper form, contained the necessary averments, and was supported by the affidavit of two credible persons. The first paragraph of the statute just quoted worked a material change in that respect. It plainly authorized the court to inquire into the truth of the alleged grounds for change of venue, and to ascertain, before granting the prayer of the petition, whether or not the alleged grounds therefor exist.

The contention of appellant's counsel is that where the plaintiff shall have instituted an action in a county other than that of his residence, unless compelled to do so in order to get service on the defendant, the order for change of venue should be granted as a matter of course upon presentation of the petition, and that, if the plaintiff instituted an action in a county other than that where the occurrence of which he complains took place, it forms a distinct ground for change of venue. We do not agree with them.

The statute plainly means that if the plaintiff commences an action in a county other than that of his residence, or other than that of the county in which this occurrence of which he complains took place, unless he is compelled to do so in order to get service on the defendant, the latter shall have the right to a change of venue upon presentation of his petition in proper form, duly verified, containing allegations of the statutory grounds of prejudice or undue influence and supported by the affidavits of two credible witnesses. Upon the presentation of such a petition, the sole issue of fact for the determination of the court is whether or not the action has been instituted in the county where the plaintiff resides or in the county where the occurrence of which he complains took place, and, if not, whether the plaintiff was compelled to institute the action in some other county in order to get service on the defendant. But if the action is commenced either in the county of the plaintiff's residence, or where the injury complained of occurred, or if necessarily brought in some other county in order to get service on the defendant, then the change of venue is not ordered as a matter of course on presentation of the petition, and the court, before granting the prayer, where the petition is resisted, should first ascertain whether or not the alle-

gations of undue influence or local prejudice are true.

There was no error in overruling appellant's petition for change of venue.

At the time of the occurrence complained of the plaintiff and his father lived at Clio. There were two passenger trains per day going south at that time, train number one passing Clio about 3:30 P. M. and train number three passing that place about 3:20 A. M. A new time card went into effect at midnight on June 30, and according to it train number three did not stop at Clio, though it had been stopping at that place under the schedule in force up to that time. Plaintiff's father on July 30, about nightfall, and after train number one had passed, purchased a ticket for plaintiff from Clio to Camden and return, and the ticket was stamped of that date, and bore the usual stipulation thereon to the effect that it was good for passage on the date of sale. Plaintiff and his father both testified that the ticket was bought expecting that he would take train number three at Clio, and that the agent did not inform them that it would not stop there, but the agent testified that he did tell them that that train would not stop at Clio, and that they would have to walk to Rison to catch the train. The testimony is conflicting on this point, and must be treated as settled by the jury in favor of plaintiff's contention. It is undisputed, however, that the agent did sell a ticket for plaintiff's use' at an hour when the only train which he could have taken on that day at that place or at Rison had passed. In other words, the ticket, according to the stipulations on its face, was void when the agent sold it, because there was not another train on that day which stopped there. The next train was due at 3:20 the next morning, and did not stop there. The plaintiff did not go to Rison that night to take the early morning train, number three, but waited for it at Clio, and it did not stop there. He walked to Rison the next day, Sunday July 31, and boarded train number one at 3:30 in the afternoon. When he boarded the train, the limit of his ticket had, according to the letter of its stipulation, expired, but under the rules of the company the conductor was not bound to reject it. One of the rules read in evidence from the book of instructions provides that "any transportation on which the limit has expired before presentation must not be honored unless the circumstances are such that in the conductor's opinion the holder

is entitled to use it, in which case he may accept it." This rule gave the conductor discretion to inquire into the facts and to honor a ticket apparently out of date if the circumstances warranted it. Moreover, the conductor testified that if he had been on train number three he would have honored the ticket, notwithstanding that train passed after midnight and the limit of the ticket had then expired. Now, the conductor knew that train number three did not stop at Clio, and as the ticket was, according to his own statement, good from Clio on train number one, he had no right to reject it because the plaintiff boarded the train at Rison. If it was valid from Clio, it was valid from Rison, an intermediate point, as the plaintiff did not forfeit his right to use the ticket because he walked down to Rison and boarded the train there, instead of embarking at Clio. Nor could the conductor rightfully assume that, because plaintiff boarded the train at Rison, he was at that place when train number three passed, so as to have had an opportunity to take passage on it. The fact that the ticket read from Clio, and was sold at that place, notified the conductor that plaintiff was seeking passage from Clio to Camden. Neither the plaintiff nor his father give any explanation why they walked down to Rison, instead of boarding train number one at Clio; but it is not necessary to sustain the cause of action that this circumstance should be explained. They were ignorant negroes, and the fact that the change in the time card which prevented plaintiff from getting on the early morning train at Clio, as he expected to do, may have brought about a confusion which induced them to go on to Rison on Sunday, where both trains were known to stop.

In *Little Rock & Ft. S. Ry. Co.* v. *Dean*, 43 Ark. 529, a case involving a similar point, Chief Justice COCKRILL, after holding that a passenger was bound by the time limit fixed in the contract, said: "The obligation bears upon the carrier with equal force. He must afford the purchaser of such ticket the necessary facilities for accomplishing his journey within the stipulated time, and upon his failure to do so he is not in position to treat the contract of carriage as forfeited, and demand a re-payment of fare for the same passage at least if the ticket holder avail himself, as in this instance, of the first opportunity to complete his journey after the expiration of the time limited."

Now, to sustain the contention of appellant in this case would be to do violence to the just rule expressed in the above quotation. The plaintiff took passage on the first train he could get after the ticket was purchased, and to refuse transportation on that train was to deny him the privilege of using the ticket at all. When the company through its agent did this, it violated its contract, and the expulsion from the train was wrongful.

Our attention is directed by learned counsel to authorities holding that the ticket presented by the passenger must, so far as the duty of the conductor is concerned, be treated as exclusive evidence of the right to passage, and that the passenger can not insist on riding on a ticket which is invalid on its face by reason of some mistake or omission of the selling agent. There seems to be conflict in the authorities on this question; but if it be conceded that the weight is with appellant's contention, yet that principle does not apply to the facts of this case where it is shown that the conductor had authority, under the rules prescribed by the company for his guidance to accept after the expiration of the time limit a ticket that the company was bound to honor. Besides, this court has decided that even where the conductor has acted strictly within his prescribed duties in rejecting a ticket apparently invalid, yet the company is liable for the expulsion on account of the mistake of the selling agent in making out the ticket. *Hot Springs R. Co.* v. *Deloney,* 65 Ark. 177.

It is next insisted that the verdict for $250 was excessive. The plaintiff, as we have already pointed out, was a boy thirteen years of age, and was put on board the train to go to Camden. He was carried only about thirty yards from the station, and was there put off the train. He testified that the conductor, after refusing to accept his ticket, took hold of him with the train porter and put him off; that his feelings were hurt; and that he walked back to his father crying. He said that the conductor took hold of him roughly, and talked roughly to him. Other witnesses testified that the boy was crying when he was put off, and another witness of acknowledged truthfulness testified that he was standing near by and saw one of the trainmen push the boy off the train, and that the boy was crying, and seemed to be distressed. The boy and his father had to walk back to Clio, and the agent refused to refund the price of the ticket.

While the verdict is in excess of what, it appears to us, the jury should have allowed, still we do not feel that it is so unjust or unreasonable that we should disturb it.

In the Dean case *supra,* where the injury seems to have been less than in this case, the court sustained a verdict for two hundred dollars. The court said concerning the amount of damages: "No harsh or unnecessary means appear to have been resorted to in this instance to expel the appellee from the train, though he, himself, testified that the conductor threatened to throw him off. The elements of damage the jury were directed to consider in case they found for appellee were the extra fare paid by him, the humiliation of being put off the train, and the inconvenience of being compelled to reach his destination by other means. The jury might well consider all of this, and we can not say that the amount was excessive."

The amount of damages for an injury involving humiliation and distress of mind resulting from a wrongful expulsion from a train, accompanied by harsh treatment, is indeterminate, and must be left, to some extent, to the sound discretion of the jury; and unless the assessment is palpably excessive, or so flagrantly unjust as to indicate passion, prejudice or a failure to appreciate the law and facts presented, this court will not disturb it. *Fordyce* v. *Nix,* 58 Ark. 136; *Railway Company* v. *Maddry,* 57 Ark. 306; *Railway Company* v. *Robbins,* 57 Ark. 384. There was no element of contumacy in the plaintiff's conduct after his ticket was rejected. He had no money to pay his fare with, so as to prevent his ejection from the train, nor did he augment his damage by refusing to get off after his ticket was rejected. The evidence shows that when the ticket was rejected, and the plaintiff stated that he had no money to pay his fare, he was roughly and rudely expelled from the train—pushed off, as one of the witnesses expressed it.

The jury had the witnesses before them and exercised their discretion, from all the facts adduced in evidence, in determining what would be fair compensation for the injury inflicted. We see no reason for disturbing the verdict.

Judgment affirmed.