### Ocala Oil Company v. Hughes, et al.

(Decided March 19, 1920.)

## Appeal from Allen Circuit Court.

1. Mines and Minerals—Leases and Contracts—Forfeiture.—Under an oil and gas lease, whereby the lessee agreed to complete a well on the premises within one year or pay rental at the rate of twenty-five cents per acre per year for each additional year in which no well was completed, the lessor was not entitled to forfeit the lease for failure to develop the premises until he first demanded that the lessee begin the development and give him a reasonable time thereafter in which to do so; nor can the lessor forfeit the lease by suit or otherwise during the period for which he has accepted payment of the annual rental.

2. Mines and Minerals—Leases and Contracts—Forfeiture.—Since, however, the chief purpose of the lessor in oil and gas leases is to obtain and market as much of the oil and gas as possible, he

may decline to accept the stipulated rentals for an extension of the right to begin operations, and demand of the lessee the performance of the contract by commencing operations, which, if not done within a reasonable time thereafter, a forfeiture and cancellation of the lease may be had by the lessor.

GILLIAM & GILLIAM for appellant.

No brief for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and defendant below, Ocala Oil Company, is a corporation, and at the time of filing this suit it was the owner by successive transfers of a lease which appellees and plaintiffs below, Rebecca Hughes and husband, J. M. Hughes, executed on May 2, 1913, to W. Mayfield, under the terms of which the lessors granted the lessee the exclusive right to mine and operate for oil and gas on thirty-four acres of land in Allen county owned by the wife. The usual stipulations giving the right to the lessee to construct pipe lines, tanks, and other structures necessary for such mining operations, are contained in the lease, and the lessors were to receive a royalty of one-eighth of the oil produced, and were paid a bonus of five dollars. The lessee agreed to complete a well on the leased premises within one year from the date of the lease; or if not, then to pay a rental of twenty-five cents per acre annually until the completion of a well, but the rental was to be paid quarterly in advance.

Plaintiffs filed this suit on April 3, 1916, alleging in their petition that the terms of the lease had not been complied with, and that defendant and its predecessors in title had failed and refused to complete or even begin the drilling of a well, and that they had failed to pay the stipulated rentals after the expiration of the first year of the lease; and that a demand had been made of them to cancel and surrender the lease, which was refused.

The answer denied the allegations of the petition, and upon trial the court sustained the prayer of the petition and decreed a forfeiture and cancellation of the lease. Complaining of that judgment, defendant prosecutes this appeal.

We have not been favored with a brief for appellees, but we conclude that they seek to and the court did apply the doctrine of the cases of Warren Oil & Gas Company

v. Gilliam, 182 Ky. 807; Dinsmoor v. Combs, 177 Ky. 740; Killebrew, et al. v. Murray, 151 Ky. 345; Eastern Kentucky Mineral & Timber Company v. Swann-Day Lumber Company, 148 Kentucky 82, and Monarch Oil, Gas & Coal Company v. Richardson, 124 Ky. 602. That doctrine is that because of the fluctuating and uncertain character of fugacious minerals like oil and gas, the primary intention of the parties to a lease like the one under consideration is to develop the leased premises for the production of such minerals as speedily as possible; and that the stipulated nominal rental for a failure to do so would not relieve the lessee from incurring a forfeiture of the lease for his failure to develop within a reasonable time. However, in order for the lessor to avail himself of the right to insist upon a forfeiture, he must not only refuse to accept the rentals, but he must make a demand of the lessee to develop the premises, and if the latter fails to do so within a reasonable time thereafter the lease will in some instances be forfeited, and in others a forfeiture will be decreed by the court having jurisdiction over the subject matter. Under the doctrine referred to there could be no doubt of the correctness of the judgment appealed from if the testimony showed the conditions authorizing the application of the doctrine, but we are convinced that the testimony wholly fails to establish such conditions.

The year in which the lessee was given the right to complete a well expired on May 2, 1914. Five days prior thereto, on April 27, 1914, the then owner of the lease (Ramble Creek Oil Company) paid by check to the husband, J. M. Hughes, $8.50, being one year's rental at twenty-five cents per acre. If this payment was legally made, it posponed plaintiffs' right to insist upon a development of the leased premises until after May 2, 1915. After that date no payment of rentals for the year ending May 2, 1916, was made until December 23, 1915, when another check was issued to the husband covering the rentals for that year, and which extended the right of the lessee to explore the premises for oil until beyond the time of the filing of this suit. If between May 2, 1915, and December 23, of the same year, plaintiffs had insisted upon a forfeiture by demanding of the lessee the development of the leased premises, they would have been completely within the doctrine of the cases, *supra*.

But having failed to do so, and subsequently accepting the rentals, they waived their rights in the premises.

Perhaps it was insisted for plaintiffs below (there being no brief informing us) that the payment of the rentals to the husband instead of the wife, who was the real owner of the leased premises, was insufficient to bind the wife, since she claims in her testimony that he was not her agent, and says that she did not receive from her husband any part of the payments made to him. But waiving the general proposition as to the right of the husband in such cases to act as agent for his wife, we think the terms of the lease involved fully authorized the lessee to pay the stipulated rentals to the husband. In the lease the wife and the husband are designated as "parties of the first part," and with reference to the payment of the rentals for an extension of the right to complete a well after the first year, the contract says: "The above rental shall be paid to the parties of the first part in person, or deposited or mailed to his credit in the Allen County National Bank at Scottsville." The agreement being that payment might be made to either of the parties of the first part, a payment to one of them will be sufficient, since one is constituted the agent of the other to accept payment for both.

Under the facts enumerated, plaintiffs did not have the right, after accepting the rentals, to demand a performance or insist upon the beginning of operations; but if otherwise, the only evidence of any character of demand found in the record is an insistence by Mrs. Hughes that according to her understanding of the lease she was entitled to twenty-five cents per acre rental quarterly, or a total sum of one dollar per acre annually, which is contrary to the express terms of the lease, and there is no effort in this suit to reform it for either fraud or mistake. When the increased rent was demanded by her, and which she said amounted to $67.00 more than had been paid, she forbade the lessee from drilling upon the premises unless such additional rentals was paid, which it, in the exercise of its legal rights, properly declined. In her testimony upon this point, after telling of her dissatisfaction, which seems to have been caused by rumors which she had heard of increased rental for similar leases in the vicinity, she was asked and answered:

"Q. Now you did go to Mr. Huntsman's office and discuss the matter with him? Ans. I went and asked him to give up my lease. Q. Did he ever do any drilling? A. No, he never drilled anything, but he wanted me to let him go on and dig. And I told him I wouldn't do it."

If this could be considered as constituting a demand for the exploiting of the leased premises as contemplated in the opinions, *supra,* defendant then had a reasonable time after such demand in which to comply.

Under the facts developed by the testimony in this record, we are convinced that the learned judge who tried the case below erroneously decreed a cancellation and forfeiture of the lease, and the judgment is reversed with directions to dismiss the petition.