## Satterfield v. Galloway, et al.

(Decided November 15, 1921.)

### Appeal from Warren Circuit Court.

1. Mines and Minerals—Lease—Rentals—Notice.—The grantor of an oil and gas lease may, after the expiration of the period in which a well is to be commenced, refuse to receive rentals for the extension of such drilling period and insist upon development within a reasonable time, and if such development is not commenced within a reasonable time from the giving of such notice

by the lessor to the lessee, a cancellation of the lease may be had upon seasonable application to a court of equity.

2. Landlord and Tenant—Cancellation—Rentals.—Before a lessor may have a cancellation of a lease he must refuse to accept further rentals, and if he accept rentals for a term to expire in the future he cannot have a cancellation of the lease until the end of that period and he has then refused to accept further rentals for an additional term and has given notice to the lessee that he will insist upon development of the property according to the lease contract.

3. Landlord and Tenant—Rentals—Cancellation.—The lessor may refuse to receive rentals in advance, that is, before the due date, even if tendered by the lessee, and if rentals are so refused and notice given that the lessor will require development of the lease before the final expiration of the time within which rentals may be paid for the extension of the lease, the lessor may, after reasonable time, if development is not commenced, have a cancellation of the lease.

BRADBURN & HARLIN for appellant.

B. S. HUNTSMAN and DENHARDT & HUNTSMAN for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant Satterfield by this proceeding in the Warren circuit court sought a cancellation of an oil and gas lease which he and his wife executed on his 127 acres of land in Warren county, November 17, 1916, on the ground that the lessee and his vendees had failed to develop the property for oil or gas according to the terms of the lease and that appellant, after waiting a reasonable time upon appellees for development, had given them written notice that he would not receive the stipulated yearly rental provided in the lease for the extension of the term in which to begin a well on his premises, but would ask for a cancellation of the lease unless a well was in good faith commenced upon his lands within a reasonable time from the giving of the notice. The relief sought by appellant Satterfield being denied by the trial court, he has appealed from its judgment. There is little controversy about the facts. Appellant Satterfield admits that he executed the lease to one Huntsman, remote assignor of appellees, and that the rentals reserved in the lease were duly paid on May 17, 1917, and May 17, 1918, and that the rentals, $30.75, due for the year beginning May 17, 1919, were forwarded to lessor by registered letter addressed to him at Allen Springs, his post office, but that he instructed the postmaster at said place to return the said registered letter unopened to appellees, who had sent it; that he

also instructed the bank at which the lease contract provided the rentals might be deposited to his credit not to receive such deposit. On the other hand, appellees admit that they and their predecessors in title received written notice on May 22, 1919, signed by appellant Satterfield warning them that he would not accept further rentals for extension of the oil and gas lease on his lands and that he would, if development was not begun thereon within sixty days from day of notice, proceed by suit to cancel the said lease; that this notice was known to appellees before they purchased an interest in the lease which is now in question. The lease contract contains the following provisions: ''Second parties covenant and agree to complete a well on said premises within six months from the date hereof· or pay to the first party at the rate of $30.75 in advance for each additional one year such completion is delayed from the time above mentioned for the completion of such well until a well is completed or this lease surrendered as is hereinafter provided. Such payments for delay may be made by check mailed to Ed. C. Satterfield or deposited to his credit in American National Bank, Bowling Green. Upon failure of the lessee to pay in yearly or quarterly sum which has become payable as above provided for delay in completing a well the lessor shall give the lessee ten days' written notice to pay the same; after the expiration of said ten days this lease shall become absolutely null and void if said money is not paid.'' It is admitted that no well was commenced upon the property of appellant although wells were drilled by appellees on adjacent land shortly before and about the time of the giving of the notice to which reference is made.

By the answer defendants averred that all the rentals due under the lease were promptly paid until May, 1919, when appellant refused to accept them, and that the rental, $30.75, was mailed by appellees to appellant in a registered letter addressed to him at Allen Springs, Kentucky, on May 14 or 15, 1919, and that same was returned unopened without any endorsement thereon, and further that appellees offered to deposit to the credit of appellant in the American National Bank of Bowling Green the said rentals, but was informed by the cashier of said bank that the appellant Satterfield had instructed the bank not to accept any rentals on said lease; that all of these things happened before the rentals were due and before appellant gave to appellees the written notice that

he would no longer receive the rentals but would insist on a cancellation of the lease unless development was started on his lands within sixty days from the date of the notice. We have held in the cases of Monarch Oil and Gas Co. v. Richardson, 124 Ky. 602; Plumber v. Southern Oil Co., 185 Ky. 243; Ocala Oil Co. v. Hughes, 187 Ky. 486, and Warren Oil & Gas Co., et al. v. Gilliam, 182 Ky. 807, that a lessor may have a cancellation of his oil and gas lease if he refuses to accept the rentals when due, notify the lessee that he will no longer accept the rentals and permit his land to remain idle and undeveloped and that he will require the lessee to execute the lease contract according to the intention of the parties by beginning in good faith the sinking of a well. But no cancellation can be had until the lessor gives such notice and the lessee fails after reasonable time to begin such development. Whether the giving of the notice by the lessor that no further rentals will be received, and that he will insist upon a performance of the lease contract by the beginning of drilling operations upon his lands must be given before the due date of the rentals, had not been decided by this court until the recent case of McNutt against Whitney & Whitney, 192 Ky. 132, was adjudged. The precise question with which we are dealing in the case at bar was before us in the McNutt case, and we said: "An examination of them (the cases) will further show that if the lessor is either paid or tendered his rent at or within the time payment is due or within the time it may be made under the terms of the lease and before he (lessor) gave notice to the lessee to develop the property, the right to demand development or a consequent forfeiture for a failure to do so is postponed until the expiration of the period for which the rents were paid or tendered. It is furthermore the rule approved by this court and prevailing generally, that when there is no provision in the lease for the payment of rent in advance the lessee has the entire rental period within which to pay it." In the instant case the rentals were almost due when the letter was sent by the appellee to the appellant containing the check for the rentals and was received by appellant either on the day on which the rentals were due or the day next before and returned by him to the sender without notation or explanation. The bank was also instructed not to receive a deposit of the rentals, but no notice was given to the appellees or either of them before the last day on which the rentals could be paid that no rentals would

be received for the extension of the lease for another year, but that appellant would insist upon development and if none was commenced would sue for a cancellation of the lease. This notice was not given on the due date of the rentals, which was May 17th, but was given on May 22nd following. By the lease contract it was provided that the rentals could be paid by forwarding a check by registered mail to the lessor at his post office or by depositing the amount in the American National Bank at Bowling Green. Having no notice appellees offered to pay the rentals in the way provided by the contract, and when a way is thus provided and the lessee complies with the terms of the lease in a good faith effort to pay the rentals and does in fact send the registered letter containing the check to the lessor at his place of address and it comes to his hand in due time but is returned by him unopened, or lessee offers to deposit the rental in the designated bank before the time limit expires but the bank in pursuance to instructions from the lessor refuses to receive it before he gives notice that he will not receive the rental and extend the lease for another year, refusal to accept the rentals will not operate to defeat the extension of the lease for another term. The sending of a check by registered mail when so provided in the lease to the lessor at his post office address or the deposit of the money in a named bank according to the terms of the lease or a good faith offer to do so, is a tender which amounts in law to a payment and will have the same effect in extending the lease as if the payment was in fact made as of that day. The lessee, however, cannot forestall the lessor and obtain an extension of the lease by paying in advance of the due date the rentals named in the lease, unless such rentals are knowingly accepted and applied by the lessor, but the lessor may at any time previous to the last moment in which the rentals may be paid give to the lessee notice that he will not again accept the rentals for the extension of the lease for another period and will refuse such rentals and demand development of the leased premises according to the terms of the lease, and if after such notice such development is unreasonably delayed the lessor may have a cancellation of the lease contract, even though the lessee has offered or tendered the rental before the due date, which rental was refused by the lessor.

The trial court having so held, the judgment is affirmed.