KRONMILLER, Respondent v. HAFNER et al., Appellants

(67 N. W.2d 353)

(File No. 9422. Opinion filed December 18, 1954)

**Gale B. Wyman,** Belle Fourche, **Percy Helm, Roswell Bottum,** Sturgis, for Defendants and Appellants.

**Burton Penfold, Lem Overpeck, Larry M. Hamblin,** Belle Fourche, for Plaintiff and Respondent.

SICKEL, J.   This action was brought under the declaratory judgment act, SDC 37.01, to determine the rights of the parties under an oil and gas lease.   Defendants, as owners of the land, leased it to plaintiffs "for the purpose of mining and operating thereon for oil and gas, * * *" for a term of five years.   The lease contains a provision that if the drilling for oil and gas be not commenced by the lessee (plaintiff) on or before July 1, 1952, the lease shall terminate:   "* * * unless Lessee, on or before said date, shall pay to the Lessor the sum of $10.00 as rental for the privilege of deferring the commencement of said well for one month(s). Upon like payments or tenders, the commencement of such well may be further deferred for like periods."   Plaintiff contends that he prevented the termination of the lease by paying the sum of $10 on or before July 1, 1952.   This is denied

by defendants. Judgment was entered for plaintiff in the circuit court, and the defendants appealed.

The lease in controversy contains the following provision: "All royalty and rental to be paid to the Lessor, his successors or assigns hereunder, shall be deemed paid to him or them if deposited to his or their credit at Newell Office, First National Bank of the Black Hills Bank, at Newell, South Dakota." On June 25, 1952, plaintiff purchased from the Midland National Bank, Billings, Montana, a draft for the sum of $10 drawn on the First National Bank of Minneapolis and payable to the Newell Office, First National Bank of the Black Hills, for the credit of defendants according to the terms of the lease. It is established by the evidence that this draft was received by the Newell Office of the bank by mail on June 30, 1952, enclosed with plaintiff's letter addressed to the bank, directing that the proceeds be deposited to the credit of defendants as rental on the oil lease in controversy, for the month of July 1952. The draft was endorsed by the payee bank and deposited to defendants' account on July 7, 1952. It was then presented by the Newell bank to the bank on which it was drawn and paid in due course. It is appellants' contention that the bank was the agent of the lessee not of the lessors; that the failure to credit lessors' account with the amount of the draft on or before July 1, 1952, terminated the lease.

The written instrument involved in this controversy is one which has been in common use in the oil industry for many years. So far as this controversy is concerned it is generally referred to as an "unless" lease.

In the case of Gillespie v. Bobo, 5 Cir., 271 F. 641, 644, the court said: "It is well settled by the decisions of those courts that such an instrument confers on the so-called lessee a privilege for the specified time, with the option to secure the extension of the privilege for an additional period upon complying with the prescribed condition, and that time is of the essence of such a provision as the one above set out. Ford v. Barton (Tex.Civ.App.) 224 S.W. 268; Bailey v. Williams (Tex.Civ.App.) 223 S.W. 311; Young v. Jones (Tex. Civ.App.) 222 S.W. 691; Ford v. Cochran (Tex.Civ.App.) 223

S.W. 1041. The equitable rule as to relieving against forfeitures has no application to the case of a failure of a holder of an option to do, within the time fixed, what is required to acquire the thing which is the subject of the option. Equity does not undertake to dispense with compliance with what is made a condition precedent to the acquisition of a right. Kelsey v. Crowther, 162 U.S. 404, 16 S.Ct. 808, 40 L.Ed. 1017; Waterman v. Banks, 144 U.S. 394, 12 S.Ct. 646, 36 L.Ed. 479; 1 Pomeroy's Eq. Juris. (4th Ed.) § 455." The above quotation was approved in Ellison v. Skelly Oil Co., 206 Okl. 496, 244 P. 2d 832, 836.

On the question of payment and acceptance the Supreme Court of Oklahoma said in Carter Oil Co. v. Samuels, 181 Okl. 218, 73 P.2d 453, 455: "Where it is stipulated in the lease that the lessee may make payment by deposit in a specified bank to the credit of the lessor, the acceptance of such payment is implied by this agreement when the deposit is made pursuant to the stipulation. If the lessor does not wish to accept the delay rentals, it is his duty to give notice to the lessee, before the rental becomes due, that it will not be accepted. McNutt v. Whitney, 1921, 192 Ky. 132, 232 S.W. 386. It has even been held that a notice to the bank to refuse to accept the rental prior to the time when the delay rental is due is not sufficient. Satterfield v. Galloway, 1921, 192 Ky. 780, 234 S.W. 448. Nor can the lessor avoid the effect of payment to the bank pursuant to the terms of the lease by refusing to withdraw the sum from the bank. When so paid, the fund becomes the property of the lessor. Kachelmacher v. Laird, 1915, 92 Ohio St. 324, 110 N.E. 933, Ann. Cas.1917E, 1117."

In the case of Gulf Production Co. v. Perry, Tex.Civ. App., 51 S.W.2d 1107, 1110, the court said: "It is an accepted rule that where an obligation is made payable at a certain place and the tender of payment is made by the debtor at the time and place designated for payment, the result is the same as if an actual tender had been made. * * * The dereliction or failure of the bank to place to the credit of * * * [payee] the $25 called for in the check could in no wise be chargeable to the lessee. * * *."

442

The case of Armstrong v. McGough, 157 Ark. 173, 247 S.W. 790, 792, 29 A.L.R. 236, 239, is one in which the provisions of the lease and the circumstances of payment are parallel to those involved in this case. There the court said: "By the terms of the lease the bank was made the agent of the lessors to receive the rent. It actually received the letter containing a check for the rent on the afternoon of Monday, September 12, 1921, and credited the amount of the check to the lessors on the next day. The time when the credit was extended to the lessors cuts no figure. This was merely the method in which the bank transacted its business. The main purpose in the minds of the parties was met and the payment was effected when the bank received the check and accepted it as a payment."

By the terms of this lease the bank was the agent of the lessors to receive the payments of delay rental and to deposit the amount of such payments in lessors' account. The bank owed to lessors the duty to deposit the amount of such rentals in lessors' account. Plaintiffs' draft was received by the bank on June 30, 1952. This constituted payment to the lessors, and extended the lease for one month.

Judgment affirmed.

All the Judges concur.