CASE 77.—ACTION BY J. R. RICHARDSON AGAINST THE MONARCH OIL, GAS & COAL CO., TO CANCEL A MINERAL LEASE.—February 13.

# Monarch Oil, Gas & Coal Co. v. Richardson

Appeal from Wayne Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

Mines and Mining—Leases—Forfeiture.—A coal, oil, gas, and mineral lease provided that the lessor was to receive a pro rata share of all the oil and minerals produced and should gas be found, then a certain rental from each well, and the lease further provided that lessee should commence a well on the premises within a year or pay thereafter an annual rental of $16. A well was never commenced, but lessee paid the annual rent which was accepted by the lessor. Held that, notwithstanding the lessor was entitled to forfeit the lease for a failure to develop the premises, yet lessor could not do so until he had first declined to accept the rent and demanded of lessee a development of the premises.

JOE BERTRAM, attorney for appellant.

Our contention is that after the lessor of mineral lands accepts the annual rental agreed to be paid therefor by the lessee from year to year, he cannot bring suit to cancel the lease for failure of lessor to develop the mineral rights until there has been a default by the lessee both in drilling and paying rental, or until after he refuses to accept the rental and gives notice that he wants his land drilled, which his lease contract authorized him to do.

HARRISON & HARRISON, attorneys for appellee.

Oil operators as a rule are men of experience in their line of business. Their contracts are drawn with a view of serving their interests. The lack of experience of the former invites deception. Speculation and peculation should be discouraged and those who seek by these means to advance their own interests should learn that the oil industry of the State, now in its infancy, will be protected by the courts and allowed unhampered development.

Our contention is:

1.  Contract with the contract involved demands the operation of the leased premises.

2.  It follows as a corollary that the lease is not complied with by the payment of rental.

3.  The failure of appellant to develop the leased premises gave the appellees the right to avoid the lease at any time, without notice.

### AUTHORITIES CITED.

Thornton, secs. 126 to 130; Bryan, sec. 182; Donahue, chap. 13, secs. 1 and 4; Huggins v. Daley, 48 L. R. A., 320; Armitage v. Mt. Sterling Oil & Gas Co., 80 S. W., 177; Berry v. Frisbie, 86 S. W., —.

OPINION OF THE COURT BY JOHN D. CARROLL. COM-MISSIONER—Reversing.

On October 10, 1898, appellee entered into a contract with Nelson & Ramsey, who assigned the contract to appellant. The material parts of the contract necessary to a consideration of the question involved in this litigation are as follows: "In con-

sideration of the mutual covenants and agreements herein contained, and the further sum of one dollar in hand paid, first party has granted and do hereby grant to second party, the exclusive right for the sole and only purposes of operating for coal, oil, gas, ores and other minerals, that certain tract of land (describing it). * * * Terms of lease twenty years or so long as oil, gas, or any of the above substances are obtained in paying quantities. The party of the second part further covenants with the party of the first part that he will give the party of the first part the full equal pro rata share of one-tenth of all the oil and minerals produced and saved on the above described property, the said one-tenth to be set aside in the pipe line when one is constructed, and should gas be found in paying quantities to justify party of the second part in marketing the same, the consideration in full to the party of the first part, instead of the one-tenth royalty, shall be five dollars per month for the gas from each well so long as it shall be sold therefrom, second party to commence a well on the premises within one year from the date hereof, or pay thereafter an annual rental of sixteen dollars each payable annually. * * * It is further agreed that the party of the second part shall have the right at any time to surrender this lease to the party of the first part and thereby be fully discharged from any and all damages arising from any neglect or nonfulfillment of the foregoing contract." In 1906 appellee instituted this action for the purpose of having the contract canceled upon the ground that appellant had failed and refused to commence a well or explore, operate, or develop the premises leased for the production of any of the products mentioned in the contract, alleging that the leased premises were located in the oil fields of Wayne county, adjacent to

lands that had been operated and developed for the production of oil and gas, which had been obtained and marketed in large and remunerative quantities to the great benefit and profit of the lessors thereof under leases and contracts similar in terms, conditions and provisions to the contract here in question; that the contract was executed for the sole purpose and condition that the lessees should explore, operate, and develop the premises for the production of oil and other minerals mentioned, and that the failure of appellant to develop or attempt to develop the premises inflicted great and irreparable injury and damage on appellee, and is depriving him of profits and privileges that he would have received if the land had been developed in accordance with the spirit of the contract. He further averred that the appellant was insolvent, and that there was no other adequate remedy except to cancel the contract. Appellant, in its answer, after traversing the averments of the petition, affirmatively averred that, under the contract, it had the right to commence a well on the premises within one year from the date of the lease, or pay thereafter an annual rental of $16.00; and that, although it had not commenced a well, it had paid the annual rental each year, the last payment being made in October, 1905, the next annual payment not being due until October, 1906, and that appellee had accepted each annual installment of rent. It further averred that it was ready, able, and willing to drill and develop the land when and as soon as appellee made his election to require it so to do; that appellee had not at any time notified it that he would not accept the annual rental, or that he would require it to develop the land. To this answer a demurrer was

sustained, and, declining to plead further, appellant has brought the case to this court.

The answer is, in effect, a plea of estoppel, rested on the fact that, under the contract, appellant had the right to either develop the premises or pay the annual rental, and that appellee by his acceptance of the annual rental had waived his right, if any he had, to require it to develop the oil and mineral resources on the land. Controversies like this have seldom arisen in our State, as not until lately has there been much activity in the search or development of oil or gas fields, but in late years the discovery of valuable oil and gas lands has made their development an important and profitable industry. And this contract, like all others, should be so construed as to fairly carry out the intention of the parties at the time it was entered into. It is manifest from the language of the contract, providing that the privilege is granted "for the sole and only purpose of operating for coal, oil, gas, ores, and other minerals," that the main purpose in the minds of the contracting parties and especially the grantor, was that the grantees should explore and develop, or attempt to do so, the resources supposed to be upon the land leased. Especially is thus true when it is considered that in the territory in which the land was located oil and gas had been discovered in paying quantities. It would be an unreasonable and harsh interpretation of this contract to hold that appellant, by the annual payment of a nominal sum, might for 20 years deprive the owner of the land of the profits he might reasonably expect to derive from the contract if it was performed as contemplated by the parties and in the spirit in which it was made. If this construction prevailed, at the expiration of the term the gas and oil originally on the premises might be exhausted by adjacent wells to the greater

profit of other landowners, and with corresponding loss to appellee. Oil leases yield nothing to the landowner when not worked, and are an incumbrance on his land, preventing him from selling or leasing it to others, although it costs the lessee nothing except the mere pittance paid as rent. The development of mineral, oil, and gas lands is too expensive for the landowner himself to undertake, and requires skill and capital ordinarily beyond the reach of the owner of the soil. So that, in order that these resources may be developed and profit realized therefrom, it is necessary that the privileges be granted to persons who are engaged in the business of exploring and developing oil, gas, and mineral fields. The fluctuating and uncertain character and value of this class of property renders it necessary for the protection of the lessor that the properties leased should be developed as speedily as possible, and the lessee will not be permitted to hold the land for speculative or other purposes an unreasonable length of time for a mere nominal rent, when a royalty on the product is the chief object for the execution of the lease. Thornton on the Law Relating to Oil and Gas, sections 129-160; Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Armitage v. Mt. Sterling Oil & Gas Co., 80 S. W. 177, 25 Ky. Law Rep. 2262; Berry v. Frisbie, 120 Ky. 337, 86 S. W. 558, 27 Ky. Law Rep. 724; Munroe v. Armstrong, 96 Pa. 307; Galey v. Kellerman, 123 Pa. 491, 16 Atl. 474.

It is true, as said by counsel for appellant, that forfeitures are not generally favored by the law, but forfeitures which arise in gas and oil leases by reason of the neglect of the lessee to develop or operate the leased premises are rather favored because of the peculiar character of the product to be produced.

Hence it has been found necessary to guard the rights of the landowner as well as public interest by numerous covenants, some of the most stringent kind, to prevent their land from being burdened by unexecuted and profitless leases incompatible with the rights of alienation and the use of the land. Forfeiture for non-development or delay is essential to private and public interest in relation to the use and alienation of property. Perhaps in no other business is prompt performance of contracts so essential to the rights of the parties, or delay by one party likely to prove so injurious to the other. Thornton on the Law Relating to Oil and Gas, section 148; Brown v. Vandergrift, 80 Pa. 142. This contract, however, can be so construed as to effectuate the intention of the parties in a manner that will do justice to the lessor as well as the lessee without arbitrarily cancelling it, as was done by the judgment of the lower court and this result may be accomplished by requiring the lessor to give notice to the lessee that he will not accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention in the minds of the parties at the time it was made by commencing in good faith its development, and, if the lessee does not, within a year from the notice, in good faith commence a well on the premises, the lessor at the expiration of that time may have the lease forfeited. The lessor in this contract did not at any time exact or demand of the lessee that it commence operating for oil or gas, but accepted the annual rentals paid in full discharge of the obligations of the contract, although at the end of any rental period he might have declined to accept rent and required the lessee to begin operations for oil or gas.

We, therefore, conclude that, under the facts stated

in the answer, which are to be accepted as true, the court erred in canceling the lease. The rent paid and accepted unconditionally by the lessor satisfied the demands of the contract up to that date, and the lessee had the right to assume that the lessor was satisfied to receive the annual rentals in lieu of the development of the land.

Wherefore, the judgment is reversed, with directions to proceed in conformity with this opinion.