## Plumber v. Southern Oil Company.

(Decided October 3, 1919.)

### Appeal from Lee Circuit Court.

Mines and Minerals—Oil Lease—Forfeiture.—An oil lease providing that the lessee shall drill a well on the leased premises within a year, or thereafter pay a small sum annually as rental, which should be accepted in performance of the lessee's contract under the lease until a well was drilled, could not be forfeited by the lessor on account of the failure of the lessee to drill a well within a year or thereafter when the lessor was accepting the rentals in satisfaction of the contract until the lessor notified the lessee that he would not accept the rentals in satisfaction of the contract and demanded that a well should be drilled.

B. G. WILLIAMS and S. P. STAMPER for appellant.

SAM HURST for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—Affirming.

On April 21, 1916, Plumber, in consideration of $1.00 paid by C. W. Sale and Company, leased to them the oil and gas privileges in a tract of land containing 160 acres "for the term of ten years from date and as much longer thereafter as oil and gas is found thereon."

It was further provided in the lease:

"First: Lessee agrees to drill a well upon said premises within one year from this date or thereafter pay to lessors rentals as hereinafter provided until a well is completed or the property hereby granted is reconveyed to lessors.

"Second: Should oil be found in paying quantities the lessee agrees to deliver to the lessors free of charge into tanks or pipe lines one-eighth part or share of all crude oil produced or saved from said premises.

"Third: Should gas be found in paying quantities the lessee agrees to pay $100.00 each year for the product of each well while the same is being sold off the premises.

"Second party agrees to complete a well on the premises within one year from the date hereof (unavoidable accidents and delaying excepted) unless the lessee thereafter pays a yearly rental of 10 cents per acre, payable quarterly in advance, until a well is completed, which payments for delay in completing well may be made direct to lessee or deposited to his credit in the Peoples Exchange Bank, Beattyville, Ky., which payments shall fully and completely extend this lease from time to time until a well is completed, and lessors agree to accept said payments of rentals when made and to mail receipts for same to the lessee.

"And it is further agreed that the lessee may at any time remove all his property and reconvey the premises hereby granted, which conveyance said lessors agree to accept and thereupon this instrument shall become null and void and the payments which shall have been made be held by the lessors as the full stipulated damages for non-fulfillment of the foregoing contract."

It appears that later Sale and Company assigned this lease to the Southern Oil Company and thereafter on October 27, 1917, Plumber brought a suit in equity against the oil company seeking to have the lease to Sale and Company which had been assigned to it cancelled upon the ground that the consideration of $1.00 for the lease and the further consideration of 10 cents an acre was not a valuable consideration, and further that the Southern Oil Company on the 21st day of October, 1917, violated its contract in that it failed to pay the rental due on or before that date to him or the Peoples Exchange Bank.

To this petition the Southern Oil Company filed an answer setting up that on April 27, 1917, it deposited in the Peoples Bank to the credit of Plumber the sum of $4.00, the rental due according to the terms of the lease, and this sum was received by the bank and placed to the credit of Plumber and accepted by him as rental for the first three months after the expiration of the one year during which it was permitted to hold the lease without rental; that on July 17, 1917, it again deposited in the Peoples Bank to the credit of Plumber the sum of $4.00, which sum was received by the bank and placed to his credit and accepted by him as rental for the second three months after the expiration of the year in which it was permitted to hold the land without rental; that on October 22, 1917, it again deposited in the Peoples Bank to the credit of Plumber the sum of $4.00, which sum was received by the bank and by it placed to the credit of Plumber as rental for the third three months after the expiration of the year in which it was permitted to hold the land without rental; that the reason it did not pay this last rental sum on the 21st day of October, 1917, according to the terms of the lease was because that day was Sunday.

For reply to this Plumber denied that the Peoples Bank was designated in the lease as his agent to collect, receive or hold the rentals named in the lease or that on October 22, 1917, the Southern Oil Company deposited in the bank to his credit the sum of $4.00 as rental due under the lease or that said sum was accepted or received by the bank and placed to his credit on that date.

It will be observed that Plumber admits the payment and receipt by him of the stipulated rental paid on April 26, 1917, and July 17, 1917, and only denies the payment or receipt by him of the rental due on August 21, 1917. In reference to the rental due on October 21, 1917, he testified that on October 22, he called at the bank and asked if the Southern Oil Company had placed anything to his credit and that Beach, the cashier, said there was nothing there and that no tender of money had been made to him nor had he received credit by it in the bank; that four or five days later he again inquired at the bank as to whether the rental installment due on October 21st had been paid and placed to his credit and the cashier told him that no money had been placed to his credit but

said there was a check in the bank for the amount if he wanted it put to his credit or the money on it.

On his cross-examination he further said that after the lease to Sale and Company he had been offered a much larger sum for the privilege of operating for oil and gas on the land than Sale and Company had agreed in their lease to pay him, although when he leased to Sale and Company the consideration recited in the lease appeared to him at that time "to be a good, valid and valuable consideration."

Beach, the cashier of the Peoples Bank, testified that a few days before October 21, 1917, Plumber came into the bank and told him not to place any money to his credit that might be paid as rental on his oil lease; that on October 22, 1917, the oil company left with him in the bank a check for $4.00, the rental due on October 21, 1917; that he held the check for four or five days until he could get some legal advice as to whether he should place it to Plumber's credit after having been forbidden by him to do so; that after receiving advice that he had the right to put the check to Plumber's credit he did so and the amount of it, $4.00, was yet in the bank to his credit; that the only reason this sum was not placed to his credit on October 22d was because Plumber had instructed him not to place it to his credit.

This was all the evidence introduced on the trial and upon hearing the case the lower court dismissed the petition of Plumber and he appeals.

The only fact in the case about which there is any dispute arises in connection with the payment of the rental due on October 21, 1917, and the weight of the evidence, as we think, shows that this rental that was paid on October 22 to the bank was not placed to the credit of Plumber on that date because he had instructed the cashier not to put it to his credit.

It will also be observed that this suit was brought within a week after the rental due on October 21, 1917, was paid as stipulated in the lease and that Plumber sought to cancel the lease without calling upon the oil company to drill for oil on the leased premises.

Under the facts we think the decision of this case must be controlled by the principles announced in Monarch Oil, Gas and Coal Co. v. Richardson, 124 Ky. 602. In that case a lease substantially like this was entered

into between Richardson and the oil company in October, 1898. From this time and until October, 1905, the oil company paid to Richardson upon its failure during this time to drill any wells on the land the rent stipulated in the lease contract. In 1906 Richardson brought suit to have the contract cancelled upon the ground that the real consideration for its execution was the condition in the lease that the oil company should within a year from the date of the lease commence to develop the leased premises by drilling wells. In the course of the opinion, which denied the relief sought, the court said: "That the main purpose in the minds of the contracting parties, and especially the grantor, was that the grantees should explore and develop, or attempt to do so, the resources supposed to be upon the land leased. Especially is this true when it is considered that in the territory in which the land was located oil and gas had been discovered in paying quantities. It would be an unreasonable and harsh interpretation of this contract to hold that appellant, by the annual payment of a nominal sum, might for 20 years deprive the owner of the land of the profits he might reasonably expect to derive from the contract if it was performed as contemplated by the parties and in the spirit in which it was made. If this construction prevailed, at the expiration of the term the gas and oil originally on the premises might be exhausted by adjacent wells to the greater profit of other landowners, and with corresponding loss to appellee. Oil leases yield nothing to the landowner when not worked, and are an incumbrance on his land, preventing him from selling or leasing it to others, although it costs the lessee nothing except the mere pittance paid as rent. The development of mineral, oil, and gas lands is too expensive for the landowner himself to undertake, and requires skill and capital ordinarily beyond the reach of the owner of the soil. So that, in order that these resources may be developed and profit realized therefrom, it is necessary that the privileges be granted to persons who are engaged in the business of exploring and developing oil, gas and mineral fields. The fluctuating and uncertain character and value of this class of property renders it necessary for the protection of the lessor that the properties leased should be developed as speedily as possible, and the lessee will not be permitted to hold the land for speculative or other purposes an unreason-

able length of time for a mere nominal rent, when a royalty on the product is the chief object for the execution of the lease.''

It was further said:

''This contract, however, can be so construed as to effectuate the intention of the parties in a manner that will do justice to the lessor as well as the lessee without arbitrarily cancelling it, as was done by the judgment of the lower court, and this result may be accomplished by requiring the lessor to give notice to the lessee that he will not accept the annual rentals and permit his land to remain idle and undeveloped, but will require the lessee to execute the contract according to the intention in the minds of the parties at the time it was made by commencing in good faith its development, and, if the lessee does not, within a year from the notice, in good faith commence a well on the premises, the lessor at the expiration of that time may have the lease forfeited. The lessor in this contract did not at any time exact or demand of the lessee that it commence operating for oil or gas, but accepted the annual rentals paid in full discharge of the obligations of the contract, although at the end of any rental period he might have declined to accept rent and required the lessee to begin operations for oil or gas.

''We, therefore, conclude that, under the facts stated in the answer, which are to be accepted as true, the court erred in cancelling the lease. The rent paid and accepted unconditionally by the lessor satisfied the demands of the contract up to that date, and the lessee had the right to assume that the lessor was satisfied to receive the annual rentals in lieu of the development of the land.''

To the same effect are: Densmoor v. Combs, 177 Ky. 740; Hughes v. Busseyville Oil & Gas Co., 180 Ky. 545; Warren Oil & Gas Co. v. Gilliam, 182 Ky. 807; Ohio Valley Oil & Gas Co. v. Irvin Development Co., 184 Ky. 517.

The relief to which Plumber was entitled upon the failure of the oil company to develop his land is clearly and fully set forth in these cases.

Wherefore the judgment dismissing his petition is affirmed.