### LEEPER et al. v. LEMON G. NEELY CO.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1923.)

No. 3738.

1. **Mines and minerals** ⬚58—**Lease held not mere option, and unilateral.**

    A lease for a term of one year, or so long as gas, oil, or any stated substances were obtained in paying quantities, *held* valid as against the contention that it was a mere option, and was void, because unilateral.

2. **Courts** ⬚365—**State decision will not disturb settled rule, unless on distinct point.**

    Only an express decision of the state court as to the very point can require a federal court to depart from a well-settled federal rule, approved by the United States Supreme Court, as to the validity of a class of oil leases.

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Mines and minerals ⊕‖73½—Condition that oil lease shall continue only for a reasonable time implied.**

The condition that an oil lease shall continue for only a reasonable time, unless by lessor's continuing consent, is imported into every Kentucky nominal-rental oil lease, even if for a definite term.

4. **Mines and minerals ⊕‖58—Consideration for oil lease determined with reference to other leases.**

The question of consideration cannot be disposed of with reference only to the oil lease in litigation, as oil companies make large expenditures. on the strength of their leases in the surrounding territory, and consideration may be found in burdens to promisee as well as in benefits to promisor.

5. **Banks and banking ⊕‖90—Lessors accepting rent paid to bank estopped to deny bank's subsequent agency.**

Where two annual payments of rent were made at a bank for lessors and were accepted by them, in the absence of any notice to the contrary, lessors are estopped from denying the bank's agency to receive a subsequent payment for them.

6. **Time ⊕‖9(1)—First day excluded.**

Generally, where the computation of time is to be made from a particular day, that day is excluded.

7. **Mines and minerals ⊕‖78(7)—Evidence held not to show notice to lessee to develop.**

Uncertain evidence that lessors of an oil lease mailed a letter to lessee stating that no further rentals would be received *held* not to show that lessors gave notice to lessee to develop.

8. **Mines and minerals ⊕‖78(3)—To terminate lease, there must be notice to develop.**

Before an oil lease can be terminated by lessors, in Kentucky, they must give lessee notice to develop and a reasonable opportunity to do so.

9. **Alteration of instruments ⊕‖12, 13—Alteration authorized or ratified, held not to prevent relief.**

An alteration of an oil lease, changing the place of payment, that was either authorized or ratified, will not prevent equity from granting otherwise proper relief.

10. **Principal and agent ⊕‖169(3)—Defendants held not liable as ratifying principal of actor changing oil lease.**

In a suit contesting the validity of an oil lease for one year with renewal privileges, a change in one counterpart of the lease, so as to make it read for a term of 20 years, *held* not so far adopted and relied on by defendants as to charge them in equity as the ratifying principal of an undisclosed actor, in view of the slight degree of practical materiality of the change.

11. **Alteration of instruments ⊕‖18—Party relying on forgery not entitled to relief.**

An unauthorized change in an ordinary nonduplicate, nonrecorded lease, making it read for a period of 20 years, instead of a period of one year with renewal privileges, would be a forgery, and a party relying on such a changed instrument could have no relief whatever.

Appeal from the District Court of the United States for the Eastern. District of Kentucky; Andrew M. J. Cochran, Jdge.

Suit by C. A. Leeper and others against the Lemon G. Neely Company. From a decree dismissing the petition, complainants appeal. Affirmed.

This is a contest between senior and junior leases of oil lands in Wayne county, Ky. The senior lease, the existing force of which is challenged, was from Dabney and others as landowners, to Smith as lessee, later assigned to

⊕‖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Neely Company. Its provisions are in customary form. The only ones now important are as follows:

"Term of lease *1* years, or so long as gas, oil, or any of the above substances are obtained in paying quantities. * * *

"Second party is to commence a well on these premises within *one year* from the date hereof and prosecute the work with reasonable diligence, or pay thereafter an annual rental of *fifteen* dollars payable annually in advance. * * * A deposit to the credit of first party ———— shall constitute a good and sufficient payment of any moneys that may become due under this contract. It is further agreed that the party of the second part shall have the right at any time to surrender this lease to the party of the first part, and thereby be fully discharged from any and all damages or claims arising from any neglect or nonfulfillment of the foregoing contract. * * * A failure on the part of the second party *to commence operations, pay said rentals,* or perform all the conditions embodied herein, renders this lease null and void."

The words and figure italicized in this quotation are written with a pen, in an otherwise completely printed form. This was made in counterpart. One part was signed by the lessors and delivered to Smith. The other part was signed by him and delivered to the lessors. Shortly thereafter Smith caused his counterpart to be recorded, and the record was made and has continued to be in the form just quoted. Some time later, the Neely Company became Smith's assignee, and, in 1920, drilled a well upon the premises, finding oil. It is not disputed that the lease had been kept in force to and for the year ending October 7, 1919, by annual payments of the specified rental. Claiming that the lease had expired for nonpayment of rental in October, 1919, the lessors made a new lease in March. 1920, to Duncan, and he assigned this in May, 1920 to Leeper, Fuller, and Howe. These assignees brought suit in equity against the Neely Company in the state court for the purpose of establishing the junior lease as a valid one, and obtained a preliminary injunction, which had the effect to confirm temporary possession in the junior lessees, who then continued the development. The Neely Company removed the case to the court below, filed its answer and counterclaim, and prayed judgment establishing its own title. Upon the trial the plaintiff's petition was dismissed, and upon the cross-complaint the Neely title was established. The plaintiffs appeal.

Alex P. Humphrey, of Louisville, Ky. (T. L. Edelen, of Frankfort, Ky., J. P. Harrison and Duncan & Bell, all of Monticello, Ky., and Humphrey, Crawford & Middleton, of Louisville, Ky., on the brief), for appellants.

Ed. C. O'Rear, of Frankfort, Ky. (Wm. T. Fowler and O'Rear, Fowler & Wallace, all of Frankfort, Ky., and Bertram & Bertram, of Monticello, Ky., on the brief), for appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1, 2] Appellants first contend that the Smith lease was a mere option and was void because unilateral. This court, in Raydure v. Lindley, 249 Fed. 675, 161 C. C. A. 585, upheld the validity of a lease the same as this in all particulars essential to this question. We are not pointed to any later Kentucky decisions which can disturb this conclusion. We are unable to see that there is in this respect any vital distinction between the "or" lease of the Raydure Case, and the "unless" lease which, in effect, this one may be. Only the most express decision by the Kentucky court as to the very point could require us to depart from the settled rule in this court, which is in accord with the Supreme Court of the United States and the great weight of authority, as pointed out in Raydure v. Lindley.

[3, 4] The Kentucky rule, first formulated in Monarch Co. v. Richardson, 124 Ky. 607, 99 S. W. 668, and recognized and applied by us in Lyon v. Union Co. (D. C.) 274 Fed. 957, which imports into every oil lease (at least, those made before March 18, 1920), even if for a definite term, a condition that it shall continue for only a reasonable time, unless by the lessor's continuing consent, seems to remove every aspect of unfairness or one-sidedness that has sometimes been made the basis for claiming illegality. It is certainly a mistake to assume that there is necessarily no consideration, because only a nominal amount has been paid. Consideration may be found in burdens to the promisee as well as in benefits to the promisor. An oil company which makes large expenditures in development commonly does so, in part, because it has leases upon surrounding territory, which perhaps cannot reasonably be drilled without considerable delay, and successful development is an undoubted benefit to surrounding territory and sometimes even to territory relatively remote. The question of consideration cannot, in the typical case, be disposed of with reference only to the one lease which happens to be in litigation.

[5] Whether the Smith lease expired October 7, 1919, depends upon inferences from undisputed facts. Whether or not there was any express understanding in advance that rentals might be paid at the Monticello Bank, and that this name might be filled in the blank left in the original lease, it is undisputed that the two annual payments due October, 1917, and 1918, were thus made, and that each was accepted by and was satisfactory to the lessors. When Neely bought the lease from Smith, he examined the records in this bank and found that the last payment then due had been made and accepted through the bank in this way. Under these circumstances, and in the absence of any notice to the contrary, the lessors are plainly estopped to deny the bank's agency to receive these payments for them. The payment now disputed was mailed from a town in Ohio to the bank on October 2, 1919, accompanied by a letter saying that it was for the purpose of this very payment to these lessors. Just when the bank received it is not clear, although it did not actually enter the amount as a credit on its books to the special account in which it carried such items until October 7th. Even though the payment was not made until October 7th, we think it was in time.

[6] The general rule is that, where the computation of time is to be made from a particular date, that day is excluded. 26 R. C. L. 740, "Time," § 18. That rule has been applied to the construction of oil leases (Thornton's Oil & Gas, § 270; Eastern Co. v. Coulehan, 65 W. Va. 531, 64 S. E. 836; Plumber v. Southern Co., 185 Ky. 243, 214 S. W. 896), and we see no reason for doubting its applicability here.

[7, 8] Plaintiffs now say that a notice to develop was given by Dabney to the Neely Company and now claim forfeiture for nondevelopment under the rule of Monarch Co. v. Richardson, and Lyon v. Union Co., supra. There is no sufficient proof of any effective notice. A letter is said to have been sent, but according to the recollection of the attorney who wrote it for Dabney, it was a mere statement that no further rentals would be received and that the lease was at an end. It did not

meet at all the spirit of the Kentucky rule, which is that, before a lease can be terminated by the lessor, he must require the lessee to develop, giving reasonable opportunity therefor. The notice, here said to have been sent, seems to have been an arbitrary cancellation. In any event, the somewhat uncertain and vague evidence of its mailing does not raise a sufficient presumption to overcome the positive denial of its receipt by every person to whose attention it might naturally have come. See Hand & Johnson Co. v. Canada Lines (C. C. A. 6) 281 Fed. 779, 782.

[9] The lease is peculiar, in that it purports to be for a term of one year, and then continues with provisions applicable only to one for a continuing term of years. Plaintiffs appeal to the canon of construction that, where there are inconsistent clauses in a contract, the earlier will prevail; but, as we point out in Hopkins v. Ziegler, 259 Fed. 43, 47, 170 C. C. A. 43, if this rule were always controlling, ambiguity because of conflicting clauses would disappear. Looking at this contract all together, and according to the method stated in Hopkins v. Ziegler, we are satisfied that it should be considered as for a term of one year and such extension thereof as might accrue from the performance of the annually recurring conditions thereinafter stated. Since there was no positive obligation on the lessee's part to do anything after the first year, the provisions as to the later drilling or rental payments are in the nature of conditions rather than of covenants, and the lease therefor is practically of the "unless" class in spite of its "or" form; but that does not seem important in this connection, because these rental payments were made annually in advance, and, even though they were conditions subsequent, they were duly performed. From these views it must follow that the Smith lease was in full force until October, 1920, unimpaired by anything yet mentioned.

[10, 11] The most serious question remains: When the controversy took its present form, in Smith's part of the original lease, which the Neely Company produced from its files, the blank for place of payment had been filled in "at the Bank of Monticello" and the figure "1" before "years" had been changed to "20." In view of the evidence and the conduct of the parties, we cannot doubt that the insertion of the place of payment was either authorized or ratified, and hence this cannot be deemed such an alteration as ought to prevent a court of equity from giving that relief to which the party would otherwise be entitled. The change in the term cannot be so lightly treated. In an ordinary non-duplicate and unrecorded lease, such a change would be a forgery, and the party relying on such a changed instrument could have no relief whatever.

Defendants contend that this is not a material change, because under the Kentucky rule such a lease for a term of 20 years would be terminated at any time by demand for development, while under the rule of construction we have already approved this lease would continue for precisely the same indefinite term. We are not prepared to accept this view, even though the effect of the situation stated is to minimize the materiality of the change. If the term were 20 years, there would be an alternative covenant to pay the rental for 19 years unless there was

development; while with the construction we give to it as a one-year lease there was no such covenant, but only a condition. Here is a substantial distinction between the two. True, the optional right of surrender minimizes even this distinction; but to surrender is an affirmative act, which might be overlooked or thought not desirable. We are compelled to think the change cannot be eliminated from consideration, as having been merely nominal.

The trial court concluded that the change should be treated as spoliation, and not as alteration. This conclusion was reached because the defendants' witnesses testified that the lease had not been changed since they received it from Smith, and Smith, called as plaintiffs' witness, testified that he made no change in it before he delivered it to defendants. Hence, as defendants did not change it (a proposition which the trial judge believed), and as Smith, their assignor, did not change it (a proposition which the judge thought bound plaintiffs, because they could not impeach their witness), it must follow that the change had been made by some stranger. We hesitate to accept this reasoning, put in this form. Such a case demands solution according to ordinary motives of human nature, rather than necessarily by what a witness says. We fully concur in finding that no change was made by defendants, or by any one acting for them, with or without authority. Such a change in an instrument which had been recorded, and of which the other party held a duplicate, without any attempt to get up the duplicate or change the record, would be so futile as to be incredible, unless established by direct proof.

The situation is not the same as to Smith. He was getting together a group of these leases to sell to defendants. Most of the others were for 20 years; some of them for 5. There would have been substantial motive to make this one read for a longer period, in order not to suggest comparative disparagement, and particularly as it might have seemed to be an insubstantial change or only the correction of a blunder. The title papers were under inspection and examination for two weeks by lawyers on both sides, as well as probably by abstractors, surveyors, and other assistants. If we accept Smith's testimony in its entirety, the inference more natural than any other is that this change was made at that time by some unknown and unauthorized assistant, who thought to do him a good turn thereby, and do no one any harm. We therefore have a case of mere spoliation.

We do not reach this result by saying that the plaintiffs are bound by Smith's testimony because he was their witness, but rather because of the purpose for which they desired and used his testimony. They assumed—perhaps unnecessarily—the burden of showing that the alteration had been made for and by the Neely Company after the transfer to it from Smith. To support the inference that the change had been thus made, they desired to establish as a fact and to stand upon the theory that the change had not been made by Smith. Then by his testimony they made this proof. In this situation, and after they are beaten upon the theory that the Neely Company made the alteration, they may not be permitted to change their position, and say that after all probably Smith made it. We do not mean that there was any es-

toppel which would prevent this change of position, but rather that, in finding the facts, it is entirely reasonable to hold plaintiffs to their position, when so doing it leads as the only alternative to the not unreasonable conclusion that the change was made by some one in Smith's interest, but without his knowledge or authority.

It is urged that the Neely Company has undertaken to stand upon and claim under the altered lease, and thus has, in effect, adopted and ratified the act of anyone who made the change. If this were true, the court might well decline to permit it to escape consequences by vouching in an unknown stranger; but this situation does not really exist, in any substantial way. When the dispute first arose between these parties, the local attorneys representing the Neely Company had a certified copy of the recorded lease for the one-year term. The original lease being at the main office in Ohio, these attorneys and the local superintendent used this copy in the course of an effort to obtain an injunction in the state court against Leeper et al. This suit was for some reason dropped; there are references to a decision against the Neely Company, but it seems to have been nothing upon which either party could rely. Sixty days later, when the present suit was commenced by Leeper et al., the original lease was sent on from the home office. It was taken for granted by the attorneys in charge of the defense and counterclaim that it was authentic, and it was therefore pleaded by a copy showing the 20-year term. Later an amended petition by Leeper et al. charged that the lease was for one year and attached a copy of it as recorded, and alleged that the term had been changed from one to 20 years. The officers of the Neely Company caused it to answer and counterclaim that the lease was for 20 years when they received it from Smith and that they relied upon him, and they therefore, in effect, denied that any change had been made. When, upon the trial, Smith testified that the lease as recorded was in its true original form, the Neely Company sought and received permission to amend its counterclaim, so as to base its rights upon the lease in its one-year form.

In determining the effect of this conduct, three things are to be observed. The first is that there is nothing to impeach the good faith of the various officers and attorneys of the Neely Company. When, in connection with their defense in the present suit, they received the original lease from the home office, they very likely did not observe at all the difference between this lease and the certified copy of the record they had formerly used; but, if they were bound to take such notice, it did not follow that the record was right and the apparent original was wrong. The converse might be true. The second thing is that, when the one year lease is given the legal effect which we think proper, it never yet has made any difference to the practical rights of the Neely Company, whether the nominal term was one or 20 years. While we cannot say that the change was so immaterial that it should be disregarded for all purposes, we can say that the slight degree of practical materiality is of importance in deciding whether the Neely Company has, by shifting its position, lost its otherwise existing rights. The third thing is that Leeper et al. are not in the slightest degree harmed either by the change in the lease, or by the temporary effort to rely upon it as

changed, or by the abandonment of that effort. The rule which forbids to the innocent holder any relief by way of enforcement of an altered contract is one òf public policy, for the sake of penalizing, and thus discouraging, alterations, and in a case like the present this rule of public policy has its minimum of appeal. We conclude that the Neely Company has not so far adopted and relied upon the alteration that it should be charged in equity as the ratifying principal of the unidentified actor.

The decree is affirmed.