[Civ. No. 7696.  First  Appellate  District,  Division  One.—July 1, 1931.]

JONAH JONES et al., Respondents, v. INTERSTATE OIL CORPORATION (a Corporation) et al., Appellants.

Chapman & Chapman for Appellants.

Jonah Jones, Jr., and Harry L. Chon for Respondents.

MURPHEY, J., *pro tem.*—This is an action for declaratory relief with respect to an oil and gas lease in the Signal Hill territory in Los Angeles County.

At the time of the execution of the lease in question no oil sand was known nor suspected to exist in that area at a greater depth than between four to five thousand feet and no oil drilling companies had had the courage at the time to make the necessarily large expenditures incident to prospecting below that level.

The lease in question was executed in February, 1923, and provided among other things: "The party of the second part (appellants) shall, within five days from date hereof resume operations to complete the oil well now on Lot Eighteen (18) Block 'H', Signal Hill Tract, and will actually start work on said well within said time, and shall continue said operations diligently, continuously and in good faith until an oil well is brought in and is producing in paying quantities as is provided in section 'Fourth' hereof or until a well has been sunk to a depth of four thousand (4000) feet."

Under the lease the appellants proceeded to drill and brought in a producing well at a depth of approximately 4,700 feet, which well has produced between 50 and 100 barrels of oil per day, which amount, however, is not regarded as a valuable producing oil-well in that district.

In 1927 a discovery well had been drilled adjacent to this property to a depth below the sands known or suspected to exist at the time this lease was entered into, and it was found, and it was conceded at the trial of this action, that there existed a far more valuable deposit of oil sands at a depth from 5,200 to 7,000 feet than had ever been known to exist in the upper sands. Immediately after this discovery wells were immediately started to penetrate the newly discovered and deeper sands, and at the trial of the action there were actually on production a great number of wells which it was known were draining and depleting the oil

from the demised premises from the sands that existed at the newly discovered and lower depths.

Under these circumstances, and without any conflict in the evidence, the court made findings with respect to the pertinent issues involved in this case which reflect the situation with greater clarity than any narration of facts that might be made by us. After reciting the fact of the execution of the lease, description of the property and the parties to the lease, the court found as follows with respect to the pertinent issues of this case:

"It is true that within eleven months last past there has been discovered, and there is now known to exist in said oil field, an oil zone which was at the time of the execution of the aforesaid lease unknown and undiscovered, and in fact was undiscovered and unknown until some eleven months ago, said newly discovered zone lying below a depth of approximately 5200 feet and extending to a known depth of some 7400 feet; it is true that this zone is known to be very productive of petroleum, oil and gas, and a number of wells have been brought to production with an initial flow of 2000 to 4500 barrels per day, and some of said wells have already produced as much as 500,000 barrels of oil since being placed on production.

"It is true that said newly discovered zone underlies the property herein described in the same manner and to the same extent as said zone is found in other sections of said oil fields; it is true that said oil zone lying below the depth of 5200 feet and extending to a known depth of 7400 feet, has been known to exist for some eleven months last past; it is true that plaintiffs made repeated demands upon defendants to drill said zone and produce oil therefrom and that defendants failed and refused and still fail and refuse so to do.

"It is true that there now exists between plaintiffs and defendants an actual controversy regarding the legal rights of the plaintiffs and the legal duties of the defendants respectively with respect to said lease and the premises therein demised and that the plaintiffs contend and allege that the defendants are legally bound by the terms of the lease and by the implied covenants hereto appertaining, to drill to said zone and produce oil therefrom; the Court further finds that the defendants contend that there is no legal

obligation requiring the defendants to so drill and contend that the terms of the lease have been fully complied with, and contend they may hold the property under said lease, without developing or producing oil from said 5200 foot to 7400 foot zone, and there is no obligation on their part to attempt so to do, and defendants have failed, neglected and refused, and still fail, neglect and refuse to drill to said deeper sands and yet prevent the plaintiffs from developing the same.

"It is true that the zone from which the defendants are now producing oil lies about 4500 feet below the surface of the land, and the production which the defendants are procuring from said zone is less than 100 barrels of oil per day; it is true that the property hereinabove described is of sufficient area to permit plaintiffs to erect a derrick and drill a well to the deep sand; it is true that the operations of the defendants in producing from said zone lying above 5200 feet, will not be interfered with by allowing plaintiffs to develop and produce oil from the zone lying below 5200 feet.

"It is true that further drilling operations might be carried on without harm or injury to the present production or harm or injury to the present well now producing above 5200 feet below the surface of the land, or in any way detracting from the present or future production of said well.

"It is true that said newly discovered oil zone lying at the depth of 5200 feet to 7400 feet was unknown to the parties to the lease hereinabove referred to at the time of the execution thereof, and it is true that neither of the parties thereto contemplated the drilling of a well to the deep sand at the time of the execution of the lease hereinabove referred to because of the lack of knowledge of its existence.

"It is true that the substantial rights of the plaintiffs are in jeopardy in permitting further delay on the part of the defendants by not drilling into and producing oil from the zone lying between 5200 to 7400 feet; . . . it is true that substantial justice may be done only by declaring that defendant immediately begin an active, *bona fide,* properly financed drilling program to tap said deeper sand lying at approximately 5200 feet to 7000 feet within ten days from date hereof.

"The Court finds that there is imperative necessity for the immediate drilling of a well to said deeper sands, . . . and any delay in the drilling of said well would act to the irreparable injury of the plaintiffs. . . . The Court finds that a receiver should be appointed herein to act under the following conditions: In the event that the defendants do not within ten days from July 25th, 1928, commence the construction and installation of a heavy rotary rig upon said premises and/or shall not within ten days thereafter spud in and thereafter continuously and diligently drill to completion said well and/or to meet the expense and requirements thereof in the manner herein stated, then, and in that event the Court finds the receiver shall take over the operation and construction of said well for the use and benefit of the plaintiffs yet as an officer of the Court and without interference on the part of the defendants or any person or persons whomsoever."

In conformity with these findings the court entered judgment, ordering, adjudging and decreeing "that the defendants are required within ten days from the 25th of July, 1928, to commence the construction of a heavy rotary rig adequately capable of drilling to the deeper sands between the depth of 5200 to 7400 feet below the plaintiffs' land, . . . and thereafter continuously and diligently in a minerlike and approved manner drill said well to the depth of said lower sands, being between the depth of 5200 and 7400 feet below the surface of the above described real property. . . . That . . . in the event defendants shall fail, neglect and/or refuse either (a) within ten days from the 25th day of July, 1928, to commence in good faith the construction and installation of a heavy rotary rig upon said premises hereinafter described in an approved manner, (b) and/or within ten days after the commencement of the construction and installation thereof to spud in and/or thereafter to diligently prosecute the construction of said well in the manner hereinbefore stated and/or to equip the same as hereinbefore stated and/or to meet the expenses thereof in the manner hereinbefore stated at the time and in the manner the same shall fall due, then, and in either event, time being the issue of this judgment, (a) the defendants shall be forever precluded from drilling into said deeper sands and be required to forthwith vacate that portion of said premises

conveniently necessary for the drilling of a well by the plaintiffs to the deepest sands, (b) plaintiffs are thereupon hereby permitted to go upon said described premises and to sink and bring in a well or wells from the sands below the sands from which the well of defendants is now producing; which said portion thus to be occupied by plaintiffs shall not interfere with the operation of the defendants' well now in operation upon said premises, nor directly detract therefrom, but that said well thus to be drilled by plaintiffs and all its paraphernalia and equipment as well as all production therefrom shall be the sole and exclusive property of the plaintiffs without right, directly or indirectly, of any kind or character on the part of the defendants. That . . . the present well now located on the above described real property and all its paraphernalia and equipment as well as all production therefrom shall remain the sole and exclusive property of the defendants subject to the payment of the outstanding royalties, as well as all conditions and obligations contained in defendants' lease and now imposed upon said well.''

To carry out the purpose of this judgment, the court ordered that D. S. Dickinson be appointed receiver to act under the following conditions: That in the event that the defendants should fail to comply with the order and direction of the court as above stated, ''then and in that event said Receiver shall take the operation and construction of said well for the use and benefit of the plaintiffs yet as an officer of this Court and without interference on the part of the defendants or any person or persons whomsoever, and said Receiver to have such other, further and additional powers as may be from time to time granted by this Court. That all expenses and cost of said Receiver shall be borne and paid by the plaintiffs herein.''

It may be summarized from the findings and decree, first, appellant, lessee, has the right and it is his duty to forthwith proceed to develop and extract oil and gas from the sand strata lying between the 5,200-foot and 7,400-foot level, or, second, if he shall fail so to do, then the respondent lessor may proceed to perform that undertaking.

It may be said in passing that this decree can be justified and sustained solely upon the ground that reasonable prudence or any other degree of human foresight could not

have foreseen or provided for the conditions that obtained, as a result of the 1927 developments in the lower strata of the oil-field.

Respondents base their cause of action upon their contention that there are certain implied covenants in oil and gas leases owing to the fact that oil deposits are of a fluctuating, uncertain and fugitive nature, lying at unknown depths and uncertain in the quantity, extent and trend of the flow and base their claim to relief upon broad equitable principles peculiarly applicable to the facts and circumstances disclosed in this controversy. The action is based upon the provisions of section 1060 of the Code of Civil Procedure of the state of California, providing: "Any person interested under a deed, will or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract." The section further provides: "He may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of such rights or duties whether or not further relief is or could be claimed at the time."

The trial court adopted the theory of the plaintiffs and granted relief as hereinabove set out. Appellants stand upon the strict letter of the terms of the lease in respect to the depth of drilling required by the contract, and claim that they have fully complied with all its terms and further contend that the relief granted is beyond and in excess of the power granted by the code section above quoted. We are unable to agree with either of these contentions.

The clear language of the statute supports the judgment and conclusion of the trial court so far as exercise of its power is involved. The appellants' argument on this phase of the case is largely that of an assertion, rather than a discussion of the terms of the statutory law. In so far as the equitable principles involved are concerned, there ap-

pears to be a wealth of authorities to support the conclusion of the trial court.

Our determination with respect to this issue is strongly confirmed at least by implication by the fact that notwithstanding the painstaking and exhaustive brief filed herein by respondents, the appellants have not seen fit to assist the court in its investigation of this rather novel and intricate problem by favoring us with a reply brief.

Under the decree which is necessarily in the alternative, appellants need not expend one dollar in addition to what they have already expended to retain their present interest upon the leasehold, so far as they are willing to develop it, and in this field their equipment or operations will not be disturbed.

The authorities relied upon by appellants and set out in their opening brief are not applicable to the facts of the instant case, a case, in our opinion, which stands practically alone in the strength of the appeal that it makes for equitable adjudication. The case of *Becker* v. *Submarine Oil Co.*, 55 Cal. App. 698 [204 Pac. 245, 247], strongly relied upon by the appellants, bears no similarity, either in the facts of the case or the equitable principles involved. Nevertheless in that case the court significantly used this language: ''As a net result of consideration of the cases which hold that, in the absence of express and definite stipulation as to the measure of diligence, an implied covenant exists demanding reasonable diligence in the development of the premises leased, it may be fairly said, in determining whether or not other wells should have been drilled, consideration must be given to a number of facts regarded collectively. Some of these are: The result of oil operations on adjacent premises; the extent of the subterranean oil reservoir; also its character and contour as affecting the question of drainage to and from the property in question; market conditions; the quantity and quality of oil thus far produced; the prospects for further production as indicated, and the knowledge possessed by those expert in locating oil bodies; the demands made upon the lessees in the maintenance of the wells already drilled and his diligence in operating them to secure the greatest possible production. The record contains no information concerning many of these important considerations.''

Such is not the situation in the present litigation. Every

element enumerated in the above statement is outstandingly and markedly present in the facts established in this litigation. We have no hesitancy in stating that had the facts of the Becker case measured up to the undisputed facts of this case an entirely different conclusion would have been reached by the appellate court. In the case of *Brewster* v. *Lanyon Zinc Co.*, reported in 140 Fed. 801 [72 C. C. A. 213], the court had to say of the case of *Colgan* v. *Forest Oil Co.*, 194 Pa. St. 234 [75 Am. St. Rep. 695, 45 Atl. 119], a case cited by appellants, as follows:

"With great deference to the able courts which have adopted this view, we think it is not sound. In the absence of some stipulation to that effect, we think an oil and gas lease cannot be said to make the lessee the arbiter of the extent to which, or the diligence with which the exploration and development shall proceed. The operations contemplated, in the event oil and gas are found in paying quantities, are not to be likened unto a business into which one puts property, money and labor exclusively his own, the profits and losses in which are of concern only to him, and the conduct of which may be according to his own judgment, however erroneous it may be. By reason of the conditions of which the lease is granted, the lessor retains at least a contingent interest in the oil and gas, to the profitable extraction of which the operations are directed. This interest in the subject of the lease, and the fact that the substantial consideration for the grant lies in the provisions for the payment of royalties in kind and in money on the oil and gas extracted, make the extent to which and the diligence with which the operations are prosecuted of immediate concern to the lessor. If they do not proceed with reasonable diligence, and by reason thereof the oil and gas are diminished or exhausted through the operation of wells on adjoining lands, the lessor loses, not only royalties to which he would otherwise be entitled, but also his contingent interest in the oil and gas which thus passes into the control of others. The object of the operations being to obtain a benefit or profit for both lessor and lessee, it seems obvious, in the absence of some stipulation to that effect, that neither is made the arbiter of the extent to which or the diligence with which the operations shall proceed, and that both are bound by the standard of what is reasonable. This is the

rule ·in respect of all other contracts where the time, mode, or quality of performance is not specified, and no reason is perceived why it should not be equally applicable to oil and gas leases. There can, therefore, be a breach of the covenant for the exercise of reasonable diligence, though the lessee be not guilty of fraud or bad faith.''

In the case of *Acme Oil & Mining Co.* v. *Williams*, decided in 140 Cal., page. 681 [74 Pac. 296, 297], the court says: ''Covenants may be implied, as well as express, and in oil leases, and others of that particular character, where the consideration for the lease is solely the payment of royalties, there is an implied covenant, not only that the wells will be sunk, but that if oil is produced in paying quantities they will be diligently operated for the best advantage and benefit of the lessee and lessor. The sole consideration usually moving the lessor in extending oil leases is, and the only consideration for the particular lease involved here was, the royalties the lessor would receive from proper and continuous pumping of oil after it had been developed in paying quantities. These leases are only valuable on development, and are then only valuable to both parties, to the extent that the product may be secured and disposed of, and when the only consideration for the lease is the share which the lessor will obtain of what is produced, there is always an implied convenant that diligence will be used toward such production.''

It may be stated in passing that, of course, there is no question in the instant litigation but that the full consideration to the lessor is, as it was in the case from which quotation has just been made, the royalties in the lease.

In *Acme Oil & Mining Co.* v. *Williams, supra,* the court further says: ''Hence it is, that ever since the discovery of petroleum in this country, leases of oil lands, with royalty to the lessor on the product, have contained provisions, not only for the immediate sinking of wells and their number, but for diligent operation after oil has been struck, and where such leases do not contain express provisions to this effect, and the only consideration for their execution is the share in the product which the lessor, either in kind, or as a royalty, is to receive, it is necessarily implied, as of the essence of the contract, that the lessee shall work the wells with reasonable dispatch for their mutual advantage. It is

not necessary that technical words should be inserted in such a lease in order to raise the condition.''

In the Acme case the court further states: ''While the general rule is, that forfeitures are discountenanced in law, there are occasions, when the only protection a landlord has is through the exercise of this reserved right, and the case at bar presents one of those occasions. If the right of forfeiture could not be exercised under such circumstances, a lessor would be at the mercy of his lessee, his land would be burdened by a lease which, while it could, and should, be made profitable through the diligence contemplated, would in fact be profitless through neglect; the lessor could not make other arrangements for the development of his property and his interest in the fee in the oil district might consist of a small holding, surrounding which numerous other operators would be successfully working, drawing off the oil ·to his irreparable injury. These are some of the peculiar circumstances surrounding leases of this character which favor the right of reentry for condition broken.''

In the case of *Monarch Oil, Gas & Coal Co.* v. *Richardson*, 124 Ky. 602 [99 S. W. 668, 669], a Kentucky case, the general principle involved in the Acme case is clearly expressed: ''The fluctuating and uncertain character and value of this class of property renders it necessary for the protection of the lessor that the properties leased should be developed as speedily as possible, and the lessee will not be permitted to hold the land for specula'ive or other purposes an unreasonable length of time for a mere nominal rent, when a royalty on the product is the chief object of the execution of the lease.''

In Thornton's Law of Oil and Gas, volume 1, section 58 (a), we find the following with respect to the principles involved in this discussion: ''But upon finding oil it is the duty of the lessee to continue to develop the premises. 'A failure to use proper diligence in the production of minerals after discovery, is a breach of a condition subsequent in the ordinary mineral lease, where the obligation to continue production is merely implied, for which breach the lease becomes subject to forfeiture.' '' (Citing many cases.)

The same author states, volume 1, section 98: ''As has been said elsewhere, there is not only a covenant on the

part of the lessee that he will fully develop the leased premises, but that he will do so with diligence. There is also an implied covenant on the part of the lessee that he will put down enough wells to protect the leased premises from being drained by wells on adjacent territory.''

In *Wilson* v. *Reserve Gas Co.*, 78 W. Va. 329 [88 S. E. 1075, 1077], the court says: ''The lessee cannot ·hold the leased land indefinitely without exploring the land and producing oil and gas. There is nothing in the contract to deny the lessors the right to terminate the lease on reasonable notice. They have not shorn themselves of that power.''

We might quote innumerable cases declaring this general equitable principle, but will content ourselves by quoting from *Barnsdall* v. *Boley*, 119 Fed. 191, 200, where an oil lessee attempted to stand upon the express provision of the lease, that but one well was to be drilled: ''In determining this question he must exercise sound discretion, such as prudent business men would ordinarily exercise in the management of their business; but this discretion, when exercised by him, must be a discretion in good faith, not an arbitrary one upon his part. It must be a discretion based upon the product of the well, which alone can demonstrate whether it is a paying well. Is the lessor to be deprived of his rights in having his property developed when wells may be and are sunk all around his property, because the lessee may claim the right to develop the property when it suits him? Having drilled but one well on the leased premises, and because the lease only provided for one well to be drilled upon it, and failing to further develop the property, it would seem to be the duty of a court of equity to interfere, and redress the rights of a lessor under such circumstances. If the lessee had within the period of five years drilled other wells on leased premises, and showed a disposition to develop it, a court of equity, under such circumstances, would be justified in holding that such action was a compliance with the terms of the lease.''

It follows that the judgment of the superior court should be and is, therefore, affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 31, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 27, 1931.