95 Cal.App.2d Supp. 931 (1950)
CHARLES R. PARTANIAN, Respondent,
v.
ERIC FLODINE, Appellant.
California Court of Appeals. 
Jan. 16, 1950.
 Youngdahl & Glick for Appellant.
 Astor & Astor for Respondent.
 BISHOP, J.
 Plaintiff sought a judgment awarding him the sum of $237.93. the amount he had paid in connection with two written contracts which, he claimed, he was induced to enter into by fraud, and as a result of which he obtained nothing. More specifically, he alleged that he had "made a written agreement wherein and whereby the said plaintiff placed an order with the said defendants for the purchase and subsequent delivery of an automobile known as Tucker Motor car," and that he was induced to enter into another contract whereby he agreed to purchase, and the defendants agreed to sell, certain accessories to be used in connection with the Tucker motor car, by the fraudulent representation of the defendants that he (the plaintiff) would be able to procure and purchase said Tucker motor car and would be able to use the accessories on it. The defendants knew, he further alleged, that Tucker cars were not being produced, and that plaintiff could not obtain one. The trial court found these allegations to be true and awarded plaintiff a judgment for the amount he had paid the defendants. We have concluded that the evidence fails to support the findings essential to the judgment.
 There is very little conflict in the evidence. Plaintiff, as did one hundred other persons, entered into two written contracts with the defendant. The essence of one is in these words: "The undersigned dealer allots to the undersigned customer the 98 Tucker motor cars which he may sell and deliver at retail if, as, and when they are produced and made available for delivery through said dealer. ..."
 "The customer is not hereby bound to order or accept delivery of a Tucker motor car, but may, if he desires, purchase said motor car according to said sequence number. [95 Cal.App.2d Supp. 933]"
 "In consideration hereof and of such purchase, if made by the customer, the customer agrees to retain ownership of said Tucker motor car for a period of one (1) year ..."
 These are the significant terms of the other writing: "Tucker Accessory Purchase Order 98. In consideration of $237.93, the receipt of which is hereby acknowledged, the undersigned dealer sells and agrees to deliver to the undersigned purchaser one group of automobile accessories as indicated below. ... Group No. 7. Auto Radio $96.50 Seat Covers $69.50 Car Heater $65. $231.00 Sales Tax $6.43. Total 237.93. ..."
 "It is specifically understood and agreed that this purchase order is in no way to be construed as an order for or purchase of a Tucker motor car and it is also understood that purchaser, by buying the Tucker Accessory Group Package, does not thereby agree to purchase or accept delivery of a Tucker motor car, as, if and when they are produced."
 "It is further understood and agreed that this instrument contains the entire agreement and understanding between the parties concerning the purchase of the Tucker Accessory Group Package and that no representations, agreements or understandings have been made except as specifically stated herein."
 "This sale is not subject to cancellation."
 [1] The plaintiff, no doubt, as the trial court became convinced early in the trial, desired to own a Tucker automobile, and that was why he signed the two agreements from which we have quoted. It appears that he was compelled to sign the accessory agreement in order to secure defendant's consent to that first set forth. No doubt, too, as the trial court stated, the two agreements constituted but one transaction.
 It is also clear, however, beyond debate, that these two writings, taken together or singly, did not result in any agreement whereby plaintiff placed an order for the purchase or delivery of a Tucker car. That which plaintiff obtained, and all that he obtained with respect to the Tucker car, was an option to purchase one, "if, as and when" defendant ever had one to deliver. Words could hardly be found to make this clearer than the words appearing in the writing. The plaintiff was not placing his order for a car, but was being allotted a place in line by virtue of which, when his turn came, if it ever did, he could purchase a car if he then wished to do so.
 Postponing for a moment consideration of the contention that defendant's fraud induced the plaintiff to enter these contracts, we find nothing that makes them invalid. It appears [95 Cal.App.2d Supp. 934] that plaintiff came to the defendant voluntarily, and signed up under no duress or compulsion other than his own inner urge. Defendant was under no obligation, before plaintiff came in, to agree to prefer him over anybody else if, at some indefinite date, he (the defendant) had a Tucker car to deliver. Had plaintiff paid defendant $237.93 for the chance he was offered, without any accessories involved, we would see nothing unconscionable or illegal about the transaction, and dressing up the deal by including the accessories does not render it less valid. Plaintiff, so far as appears, was of age and mentally competent; the chance being taken was not in the nature of a lottery; he took a legitimate chance. That it did not pan out is no reason why he should have his money back.
 [2] Turning now to the matter of fraud, it is, of course, true that in spite of the provisions contained in the next to the last paragraph of the accessory purchase order, the plaintiff can, upon a rescission, present evidence of fraud in order to recover that which he was induced by fraud to pay. (Speck v. Wylie (1934), 1 Cal.2d 625 [36 P.2d 618]; Herzog v. Capital Co. (1945), 27 Cal.2d 349, 353 [164 P.2d 8].) The fraud may not, however, consist of promises contrary to those contained in the written contracts. (Bank of America v. Pendergrass (1935), 4 Cal.2d 258, 263 [48 P.2d 659]; Cobbs v. Cobbs (1942), 53 Cal.App.2d 780, 785 [128 P.2d 373].) So it is that the "fraudulent representation," (neither alleged nor found to have been made, but strongly stressed by the plaintiff as he testified, and presented in his argument on appeal) that the accessory purchase contract could be cancelled at any time, may not be relied upon by the plaintiff. With commendable candor he freely admitted, when a witness, that he had read the agreement before he signed it. It plainly states that "This sale is not subject to cancellation." He may not rescind because of any statement by defendant's agent that he could.
 [3] We find, as already indicated, that the evidence fails to support the allegations and findings touching fraud. Plaintiff, of course, having based his case upon fraud, had the burden of proving it. (Estate of Ross (1926), 199 Cal. 641, 651 [250 P. 676, 680]; Hedden v. Waldeck (1937), 9 Cal.2d 631, 636 [72 P.2d 114, 116].) In his complaint he alleged that it had been represented to him "that he would be able to procure and purchase said Tucker motor car" whereas in fact defendant "knew and had knowledge that said plaintiff would not be able to purchase or procure the said Tucker [95 Cal.App.2d Supp. 935] motor car ... That said defendants at said time concealed and withheld the knowledge from this plaintiff that there were no Tucker motor cars in production ..." There is no evidence whatever supporting the finding that there was no Tucker motor car in production, let alone that the defendant knew that there was none but concealed the fact from the plaintiff. The nearest that plaintiff came to proving his allegations was when he testified: "They told me deliveries would start in October, and that I should get mine in the near future" and again when he replied "Yes" to the question, "They told you that deliveries would start about October of 1948?" (Other statements made after the contracts had been executed did not induce their execution, obviously, and need not be reviewed.) These representations as to a future event were not shown to be fraudulently made. The defendant testified that "We had a representation from the factory we could deliver a car on or about a certain date ... they were going to start three months after in September, so we could start the delivery of cars in December" and there was not a scrap of evidence to warrant the conclusion that the defendant had not been so advised or that he knew that he was a dealer for a nonexistent automobile. Nor did plaintiff testify that he relied upon any statement made by the defendant's salesmen (plaintiff and the defendant never met) to the effect that Tucker cars would be produced. So far as appears, the plaintiff may have relied entirely upon the understanding generally prevalent in September, 1948, that a revolutionary car was about to be put on the market, in which event no actionable fraud exists. (Carter v. Seaboard Finance Co. (1949), 33 Cal.2d 564, 570 [203 P.2d 758, 762].) The result is that there was no substantial evidence that the defendant was guilty of fraud inducing plaintiff to sign the writings or pay over any money.
 [4] Nor may the judgment be sustained on the theory of failure of consideration. Plaintiff obtained that which he bought and paid his money for under the express terms of the contracts, that is, a combination of two things: an option to purchase, expressly made contingent upon defendant's receiving 98 cars to deliver; and the right to the delivery of the accessories upon demand. With respect to these two things, there is no evidence of a failure of consideration. The condition may not be added to these contracts by implication, that if the 98th car was not delivered within a reasonable time plaintiff might have his money back upon demand. As such [95 Cal.App.2d Supp. 936] a condition would be both contrary to an express provision of the writings ("This is not subject to cancellation") and is not necessary to give effect to the writings, it may not be indulged in. "It may be stated generally that implied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made. Furthermore, implied covenants can be justified only upon the ground of legal necessity arising from the terms of the contract, or the substance thereof, and the circumstances attending its execution; and the implication from the words must be such as will clearly authorize the inference of an imputation in law of the creation of a covenant. (14 Am.Jur., pp. 490, 491.)" (Cousins Inv. Co. v. Hastings Clothing Co. (1941), 45 Cal.App.2d 141, 143-144 [113 P.2d 878].) "True, courts have frequently considered implied covenants as being within a contract but such covenants are justified only when they are not inconsistent with some express term of the contract and, in the absence of such implied terms, the contract could not be effectively performed. (Williston on Contracts, vol. 5, 1293; Jones v. Interstate Oil Corp., 115 Cal.App. 302 [1 P.2d 1051].)" (Tanner v. Title Ins. & Tr. Co. (1942), 20 Cal.2d 814, 824 [129 P.2d 383].)
 The judgment is reversed.
 Shaw, P. J., and Stephens, J., concurred.